UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

AXEL FIRE, LLC,                                          Case no. 18-12876-t7

      Debtor,


YVETTE GONZALES,

      Plaintiff,

v.                                                       Adv. No. 20-1048-t

COMMUNITY 1ST BANK LAS VEGAS;
PATRICK LOPEZ; and JOANNE E. ANGEL,

      Defendants.


**<u>OPINION</u>**

Plaintiff, the case trustee, brought this adversary proceeding to obtain certain surplus funds generated by a foreclosure sale of property quitclaimed to Debtor. The defendants in the proceeding are the bank that foreclosed on and bought the property at the special master's sale; Debtor's state court counsel, who claims a lien on the surplus funds as collateral for his fee; and the grantor of the property. The surplus funds arose because the bank bid more than its judgment at the special master's sale.

Before the Court is Plaintiff's motion for summary judgment, opposed by the bank (Community 1st Bank Las Vegas), and the lawyer (Patrick Lopez). Joanne Angel, the grantor, has elected not to defend. Having considered the parties' submissions and the relevant law, the Court concludes that Plaintiff is entitled to summary judgment that Mr. Lopez does not have an attorney

charging lien on the surplus funds (Count II of Plaintiff's complaint). The remaining issues raised in the motion will be addressed in a separate opinion.

A.    Facts.[1]

The Court finds that there is no genuine dispute about the following facts:[2]

On November 5, 2007, Raymundo Angel, II and Robert D. Angel borrowed $52,300 from the bank, evidenced by a promissory note and secured by a mortgage on their house at 783 Dalbey Drive, Las Vegas, New Mexico (the "Property"). Robert died in August 2008 and Joanne Angel was appointed his personal representative. Raymundo died in November 2013 and Joanne was appointed his personal representative.

The note went into default on August 20, 2015. In April 2016 the bank filed the Foreclosure Action. Joanne was named as a defendant, in her personal capacity and as the personal representative of Raymundo's and Robert's estates. In May 2016, the bank filed a notice of lis pendens in the county records.

In November 2016 the bank filed a motion for default judgment. Joanne did not respond.

On January 9, 2017, while the motion for default judgment was pending, Joanne signed a quit claim deed for the Property in favor of Axel Fire, LLC. It is not clear from the face of the deed

---

[1] The Court takes judicial notice of the docket in this adversary proceeding, the main bankruptcy case, and the state court foreclosure action brought by the bank against defendant Joanne Angel and others in the Fourth Judicial District Court, State of New Mexico, No. D-412-CV-2016-00212 (the "Foreclosure Action"). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Mr. Lopez filed a "Response" to the Complaint that neither admitted nor denied the allegations of the Complaint. Pursuant to Fed. R. Civ. P. 8(b)(6) and Fed. R. Bankr. P. 7008, Mr. Lopez is deemed to have admitted the allegations in the Complaint.

whether Joanne signed the deed in her personal capacity, as Raymundo's and Robert's personal representative, or both.[3] Axel Fire paid Joanne $5,000.

Six days later the state court held a hearing on the default judgment motion. None of the defendants appeared, nor did Axel Fire. On February 10, 2017, the state court entered a Default Judgment, Summary Judgment, and Decree of Foreclosure (the "Judgment"). The Judgment awarded the bank a money judgment for $16,000.94, plus $1,706.16 in interest, $450.75 in late charges, and $5,860 in attorney fees and costs, for a total of $24,017.85, with post-judgment interest at 7.25% per annum. The Judgment foreclosed the bank's mortgage and directed a special master's sale of the property. The Judgment provided:

> From the proceeds of sale, the special master is hereby directed to retain his fees, costs and expenses, and then pay Community 1st bank Las Vegas . . . the amount of its judgment awarded herein, including any interest, attorney fees, costs and expenses.
>
> . . . If the proceeds of the [s]pecial [m]aster's sale are in excess of . . . sums payable to the [s]pecial [m]aster and to [the bank], then the [s]pecial [m]aster shall disburse the balance of the proceeds of sale, if any, pursuant to further [o]rder of [the c]ourt.

A special master sold the Property by public sale on March 20, 2017. The bank was the only bidder. Though its judgment was only $24,018.37, the bank bid $75,000. The bank did not pay the difference (the "Surplus Funds") to the special master. On March 27, 2017, the special master filed his report of sale in the Foreclosure Action. He stated, inter alia, that

> 9.      The highest and best bid in the amount of $75,000 was made by Community 1st bank Las Vegas, the "Purchaser", to whom the Property was sold.
> 10.     The Purchaser bid in the amount of $75,000 which constitutes the entirety of Community 1st bank Las Vegas' total judgment on the Property, plus the special master's costs, expenses and fees, and for the publication of Notice in the Albuquerque Journal, North edition.

---

[3] In her affidavit filed in this proceeding, Joanne avers that she signed the quitclaim deed personally and as the personal representative of Raymundo's and Robert's probate estates. She further avers that her intent was to convey all right, title, and interest in the Property to Axel Fire.

11.     The amount bid at the sale by the Purchaser has been applied first to pay all costs and expenses of sale, including the special master's fee and costs, and second to Community 1st bank Las Vegas in satisfaction of its Judgment.

The special master's report was prepared by the bank's counsel. On March 31, 2017, the state court entered an order approving the special master's report, confirming the sale, and discharging the special master. No mention was made of the Surplus Funds. The order was drafted by the bank's counsel.

The bank recorded the special master's deed in the San Miguel County clerk's office on April 3, 2017.

On or about May 12, 2017, Joanne and Axel Fire signed an "agreement to pursue excess funds," under which they agreed to hire Mr. Lopez to represent them in trying to get the Surplus Funds. The parties agreed that Axel Fire would pay Mr. Lopez' attorney fees, and that Joanne would get 10% of the net proceeds. It is not clear who drafted this agreement.

On December 8, 2017, the bank sold the Property to a third party for $64,000. The bank filed a motion to determine the disposition of the Surplus Funds on January 30, 2018. The bank represented that the Surplus Funds totaled $26,775.78—the difference between its judgment and the net proceeds it received from reselling the Property.

On or about February 5, 2018, Mr. Lopez and Axel Fire signed a Legal Services Engagement Letter, pursuant to which Axel Fire engaged Mr. Lopez "for the specific purpose of recovering the excess proceeds generated from the sale of the property at foreclosure auction." The letter provides that Mr. Lopez would charge 33.3% of any funds awarded to Axel Fire in the Foreclosure Action; and that Lopez " would retain a lien against any settlement proceeds and you hereby agree to have any such proceeds issued to our firm trust account . . . ." The letter does not mention Joanne.

-4-

On February 15, 2018, Mr. Lopez entered an appearance in the Foreclosure Action on behalf of Joanne (not Axel Fire). On the same day, Mr. Lopez filed Joanne's response to the bank's Surplus Funds motion, arguing that the Surplus Funds should be calculated using the foreclosure sale price, not the bank's net profit on resale.

On May 29, 2018, the state court entered an "Order on Motion to Determine Disposition of Excess Funds" (the "Surplus Funds Order") determining that the bank should deposit $49,922.95 in the state court registry within 14 days. The order did not say who should get the money. The bank filed a motion for reconsideration on June 4, 2018. It has never deposited any money into the court registry.

On June 19, 2018, Mr. Lopez entered his appearance in the Foreclosure Action on behalf of Axel Fire, LLC. On the same day, Mr. Lopez filed Axel Fire and Joanne's "joint response" to the bank's motion to reconsider. The state court held a hearing on the motion to reconsider on July 30, 2018. Based on representations by Mr. Lopez and counsel for the bank that they had reached a tentative settlement, the court did not rule on the bank's motion to reconsider.

Apparently the bank and Axel Fire agreed on a settlement figure ($32,500). There is no evidence that any other settlement terms were agreed to. On October 8, 2018, Mr. Lopez asked the the bank to draft a settlement agreement, which it did. However, the bank's form of settlement agreement had not been signed by anyone when Axel Fire filed this case on November 16, 2018. Joanne signed the settlement agreement on April 12, 2019.

On July 3, 2019 (about seven and a half months postpetition), Mr. Lopez filed a Notice of Attorney's Charging Lien in the Foreclosure Action. For undisclosed reasons, he did not file a proof of claim in this case. The deadline to do so passed on April 29, 2019.

B.      Summary Judgment Standards.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

C.      Mr. Lopez Does Not Have an Attorney Charging Lien on the Surplus Funds.

1.      Requirements For a Valid Attorney Charging Lien in New Mexico. "Although in many states attorney charging liens are governed by statute, in New Mexico they have their origin in common law and are governed by equitable principles." *Sowder v. Sowder*, 977 P.2d 1034, 1037 (N.M. App. 1999). The New Mexico requirements for a valid attorney charging lien are: (1) a valid contract between the attorney and client, which need not explicitly assert a lien against the client's recovery; (2) a fund recovered by the attorney"; (3) "clear and unequivocal notice" of the attorney's intent to assert a lien against any judgment or recovery, so all parties know not to make payments without protecting the attorney's claim; and (4) timely assertion of the lien. *Sowder*, 977 P.2d at 1037–38 (citations omitted). Failure to satisfy any of the four requirements invalidates the lien. *Id.* at 1037.

2.      Is There a Valid Contract? There may be a valid contract between Axel Fire and Mr. Lopez, as Axel Fire signed Mr. Lopez' engagement letter. On the other hand, there could be a significant conflict of interest between Joanne and Axel Fire. The current record is not clear on this point. If there is a conflict, then the enforceability of the engagement letter is open to question.

*See generally* NMRA, Rules 16-107, 16-108. The Court makes no finding or conclusion on this issue.

       3.      <u>Did Lopez Produce the Surplus Funds</u>? Not all legal work produces "tangible fruits" to which a lien may attach. In *In re Siebel*, 2018 WL 2283835, at \*6 (Bankr. D.N.M.), for example, the Court observed that transactional attorneys may not assert charging liens on the businesses and real estate purchased by their clients, nor may collection attorneys assert charging liens on the loans they collect, nor may foreclosure attorneys assert charging liens on foreclosed property. "The quintessential charging lien arises in a state lawsuit to recover money, e.g., a tort claim or breach of contract action. In such cases, success results in a specific fund of money, generated by the attorney's efforts." *In re Blue Jet, Inc.*, 2017 WL 785606, at \*5 (Bankr. D.N.M.); *see also Cherpelis v. Cherpelis*, 959 P.2d 973, 975 (N.M. App. 1998) (attorney may recover fees from fund recovered by his efforts); *Albuquerque Tech. Vocational Inst. v. Gen. Meters Corp.*, 17 F. App'x 870, 87-77 (10th Cir. 2001) (judgment obtained on a counterclaim is subject to an attorney charging lien); *Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.*, 687 P.2d 91, 92 (N.M. 1984) (an attorney charging lien cannot be imposed on "a fund generated solely from the client's own resources"); *In re Sanchez*, 2020 WL 4577113, at \*1, n.5 (Bankr. D.N.M.) (client's house is not a fund to which an attorney charging lien may attach).

       As the record owner of the Property at the time of the foreclosure, Axel Fire properly asserted a right to the Surplus Funds. *See, e.g., Fidelity Bank v. King*, 136 P.3d 465, 468 (Kan. 2006), *citing* Restatement (Third) of Property: Mortgages § 7.4 (1996) ("When the foreclosure sale price exceeds the amount of the mortgage obligation, the surplus is applied to liens and other interests terminated by the foreclosure in order of the priority and the remaining balance if any, is distributed to the holder of the equity of redemption."). Unlike a circumstance in which an attorney,

by his effort and skill, converts a cause of action into a judgment or settlement, Mr. Lopez' efforts did not create the Surplus Funds. In fact, Axel Fire would have done better to appear pro se and accept the $26,775.78 offered by the bank. That would have been a better result than Axel Fire would get under the purported $32,500 settlement, after deduction Mr. Lopez' asserted 1/3 fee (the net recovery would be $21,666.67). Far from the alchemy performed by lawyers who turn claims into gold, thereby justifying their charging liens, Mr. Lopez seeks to enforce agreements that would diminish his client's recovery. Asserting a lien under these circumstances is unreasonable. *See Computer One, Inc. v. Grisham & Lawless, P.A.*, 188 P.3d 1175, 1180 (N.M. 2008) ("In addition to the[] procedural requirements, a court in its equitable powers may inquire into the reasonableness of the asserted lien." (alterations omitted)).

The Court concludes that the Surplus Funds were not produced by Mr. Lopez and cannot be the subject of his asserted attorney charging lien.

4.       <u>Mr. Lopez Did Not Give Notice of the Lien</u>. "A charging lien is perfected by giving clear and unequivocal notice to all interested parties of the intention to assert it." *Philipbar v. Philipbar*, 980 P.2d 1075, 1079 (N.M. App. 1999), (citing *Thompson v. Montgomery & Andrews, P.A.,*, 816 P.2d 532, 535 (N.M. App. 1991)).

Pursuant to § 362, [4] the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to create, perfect, or enforce any lien against property of the estate; [and] any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]" An "action taken in violation of the stay is void and without effect." *Franklin Sav. Ass'n v. Off. of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir. 1994). Mr. Lopez first filed a notice of attorney

---

[4] Unless otherwise indicated, all statutory references are to 11 U.S.C.

charging lien in July 2019, more than seven months post-petition. His attempt to satisfy the notice requirement for attorney charging liens violated the automatic stay and is void.[5]

     5.      <u>Timeliness</u>. Mr. Lopez satisfied the timeliness element because he sought to assert his attorney charging lien before the Surplus Funds were distributed.

D.     <u>The Trustee's Strong-Arm Powers Permit Her to Avoid Mr. Lopez' Charging Lien</u>.

Section 544(a)(1) provides that the trustee may

> avoid . . . any obligation incurred by the debtor that is voidable by . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

Under § 544(a)(1), a trustee may avoid liens that were not perfected prepetition. *See, e.g., In re Borges*, 485 B.R. 743, 795 (Bankr. D.N.M. 2012); *In re Harper*, 516 F.3d 1180, 1182 (10th Cir. 2008). Here, Mr. Lopez' attorney charging lien was not perfected under New Mexico law because no notice was given prepetition. Thus, even if the charging lien was otherwise valid, it was unperfected on the petition date and the trustee may avoid it under § 544(a)(1).

Conclusion

Mr. Lopez does not have an attorney charging lien on the Surplus Funds because they were not generated by Mr. Lopez' efforts. In addition, the required notice was not given prepetition and Mr. Lopez' postpetition attempt to give notice was void. Alternatively, the trustee may avoid the lien under her § 544(a)(1) "strong arm" powers because it was unperfected on the petition date.

---

[5] Some liens or security interests may be perfected post-petition and "relate back" to a prepetition date. *See* Collier on Bankruptcy ¶546.03[2][a](16th ed.) (discussing § 546(b)(1)(A) and giving a Uniform Commercial Code example of a purchase money security interest); *see generally* § 546(b)(1)(A). Under New Mexico law, however, perfection of an attorney charging lien does not relate back, so the trustee's "strong arm" powers under § 544(a)(1) can be used to avoid Mr. Lopez' lien. *See, e.g., In re Veazey*, 272 B.R. 486, 491 (Bankr. D. Kan. 2002) ("If perfection of a lien does not have retroactive effect, it does not fall within the § 546(b) exception.").

Plaintiff is entitled to judgment in her favor on her lien avoidance claim. A separate partial summary judgment will be entered.

_____
Hon. David T. Thuma
United States bankruptcy Judge

Entered: April 22, 2021
Copies to: counsel of record